Roy Eaton v. Commissioner. Genevieve H. Eaton v. Commissioner.
Eaton v. Commissioner
Docket Nos. 24081, 24082.
United States Tax Court
1952 Tax Ct. Memo LEXIS 140; 11 T.C.M. (CCH) 734; T.C.M. (RIA) 52221; July 9, 1952
*140 Successive trusts for the benefit of the petitioners' minor children were created by the husband-petitioner. Under the first trust the income could be used by the trustee for the benefit of the children; under the second, it could not be so used. Both were to endure until the youngest child became 25, when corpus and accumulated income were to be distributed to the beneficiaries; a trust company was the trustee; the trusts became special partners in a partnership in which the settlor was a general partner and made capital contributions of the corpus paid in by the settlor; both trusts were irrevocable. Held, that the settlor did not have sufficient control over the trusts to make the income taxable to him. Helvering v. Clifford, 309 U.S. 331, distinguished. Held, further, that the trusts were bona fide partners in the partnership and their distributive shares of partnership income are not income of the petitioners. Milton Cades, Esq., 400 Bishop Trust Bldg., Honolulu, T. H., and Urban E. Wild, Esq., for the petitioners. Charles W. Nyquist, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined *141 deficiencies in income tax for the years and in the amounts as follows: Year
Roy Eaton
Genevieve Eaton
1943
$ 7,477.24
0
1944
23,589.24
0
1945
19,282.01
$381.09
1946
449.81
449.81
The principal issue is whether the income reported by two successive trusts created by the petitioner Roy Eaton for his minor children is income of the petitioners. The larger part of the income reported by the trusts was reported as their distributive shares of income of a partnership of which the petitioner Roy Eaton was a member. They also reported income from investments. As to both kinds of income the question is whether the settlor of the trusts had sufficient control over them so as to make their income taxable to him. As to the partnership income, there is a further question as to whether the trusts were bona fide partners in a partnership in which the petitioner Roy Eaton was a member. Issues as to net operating losses incurred in the operation of a sampan and a capital gain on the sale thereof were settled by stipulation. Findings of Fact At all times material hereto, the petitioners were husband and wife and were residents of the Territory of Hawaii or of *142 the State of California. Their income tax returns were filed with the Collector of Internal Revenue for the District of Hawaii. The petitioners have three children who in 1942 were respectively of the ages of 12, 10, and 8 years. On March 18, 1940, the petitioner Roy Eaton, hereinafter called the petitioner, acquired franchises from Nehi Corporation to manufacture and sell three Nehi beverages * in the Hawaiian Islands. All three franchises provided that they were of a personal nature, and contained restrictions against any assignment, and prohibitions against assignment to corporations. The petitioner had not had any previous experience in the bottling business. He commenced the operation of a bottling plant in Hawaii on June 8, 1940. The business conducted under the Nehi franchises consisted of the purchase of concentrates from Nehi Corporation, from which syrups were made. The syrups with carbonated water were bottled and the bottles were cased and delivered to the retail trade for sale to the public. The business required substantial capital for the acquisition of a plant, bottling *143 machinery, and delivery equipment. The attack on Pearl Harbor on December 7, 1941, and the subsequent military activities caused the petitioner considerable concern as to whether he would be able to obtain supplies to carry on his bottling business, and also as to whether the business would be continued in the event that anything happened to him in view of the fact that the franchises were in his name Military authorities in Hawaii considered the maintenance of adequate supplies of carbonated beverages to be necessary for troop morale purposes and assisted the petitioner in obtaining shipping space for supplies for his business. The petitioner corresponded with Nehi Corporation in 1942 and asked for suggestions as to what might be done with his franchises in the event of his death to insure that the business might be continued for the benefit of his wife and children. He was particularly concerned about providing for his family as he had put into the business everything that he had. The replies that he received from Nehi Corporation contained some suggestions, but they were not satisfactory to the petitioner. The petitioner then consulted an attorney as to possible methods of *144 keeping the franchises and continuing the business as a protection for his family. The method decided upon and carried out was to organize a special partnership to operate the business, with a trust as a special partner. On September 30, 1942, a special partnership was organized in which the petitioner, Charles P. Johnson, and Walter L. Prock, Jr., were the general partners, and Bishop Trust Company, Limited, Trustee under Deed of Trust of Roy Eaton was the special partner. Johnson and Prock were acquaintances of the petitioner, and Johnson had been office manager of the petitioner's business. Both were in the military service at that time, but stationed in Hawaii. The petitioner was aware that Nehi franchises had been issued in the names of several individuals in other instances, and he felt that having his franchises in the names of three persons would be some assurance of the continuance of the business in the event of his death. Neither Johnson nor Prock had had any experience in general business management, and the petitioner felt that it was desirable to have an associate in the business who had had such experience. The Bishop Trust Company, Limited, as a fiduciary, was experienced *145 in the management of businesses, and that fact prompted the petitioner to admit it, as trustee, to the partnership as a special partner. The partnership was known as Nehi Beverage Company of Hawaii. It complied with all required legal formalities, such as filing for record and publication. On the same date, September 30, 1942, the petitioner created a trust, herein called Trust No. 1, by executing a deed of trust naming Bishop Trust Company, Limited, as trustee. The petitioner paid over to the trust the sum of $15,000, which the trustee was required by the terms of the trust deed to contribute, as special partner, to the capital of the partnership for a 30 per cent interest therein. The trust was to endure until the youngest of the petitioner's children attained the age of 25 years, or until the prior death of the last survivor of the children. Upon termination, the corpus and accumulated income were to be paid over to the surviving children and the children of any deceased children and, if none, then to the persons other than the petitioner who would be the heirs-at-law of the last survivor of the children. In the event the partnership, Nehi Beverage Company, terminated during the *146 continuance of the trust, the trustee could terminate the trust and distribute to the beneficiaries. During the continuance of the trust, the trustee was required to accumulate the income, but it was given discretion to use a part of the income for the maintenance, support, and education of the beneficiaries, and if income was not sufficient it could use corpus for that purpose. The petitioner reserved the right to convey additional property to the trustee. If any beneficiary was a minor when it became entitled to any distribution, the trustee could make payment to the parents or guardian of the minor. The trustee was given the usual trust powers of management, sale, investment and reinvestment, with a provision that during the lifetime of the petitioner the trustee should obtain his consent to the making of investments and upon his death the trustee was to be restricted to investments that trustees are permitted by law to make. There was a further provision that the trustee might make advances or loans to, or further investments in the partnership Nehi Beverage Company of Hawaii "without liability for any losses resulting therefrom." The trust, by its terms, was "irrevocable *147 by the Settlor", and the settlor reserved the right to amend only by adding other property to the trust. It was further provided that in no event should any of the trust property or income be paid to or inure to the benefit of the petitioner. The trustee was authorized to rely on the auditor's reports as to the business of the partnership, Nehi Beverage Company of Hawaii, and was not required to make any independent investigation into its affairs or accounts. The trustee was not accountable for any loss resulting from any act consented to by the petitioner or for any loss resulting from any investment in or loan or advance to Nehi Beverage Company of Hawaii. The purpose of the special partnership was to acquire the assets and carry on the bottling business theretofore carried on by the petitioner. The capital provided for and the interests of the partners were as follows: Amount
Interest
Roy Eaton
$30,000
60%
Charles P. Johnson
2,500
5%
Walter L. Prock, Jr.
2,500
5%
Bishop Trust Company,
Limited
15,000
30%
Totals
$50,000
100%
The special partner was not to be liable for the debts of the partnership beyond the extent set forth in a specified *148 section of the Revised Laws of Hawaii. The agreement provided that the general partners who were active in the business should receive as compensation for their services a salary chargeable as an expense in computing partnership profits in such amount as should be determined by the general partner or partners. The remaining net profits and the losses were to be shared by all of the partners in accordance with the capital contribution of each, but with a limitation on the shares of profits of Johnson and Prock while they were not devoting full time to the business. Profits could be withdrawn at such times as the general partners determined. Only general partners had authority to transact the business of the partnership and incur obligations. The special partner could investigate the partnership affairs and advise the general partners as to its management. The determination by the general partner or partners owning the majority in interest of the capital contributed by the general partners was to be binding upon and establish the policy of the partnership. Books were to be audited periodically, and a general account of partnership affairs was to be taken annually. The partnership *149 was to continue for 10 years and thereafter from year to year until terminated by any general partner giving six months' notice of intention to terminate. It could be terminated at any time on two months' written notice by a majority in interest of the general partners. By bill of sale made as of the close of business on September 30, 1942, the petitioner conveyed to the partnership the assets used in his bottling business, and the partnership assumed his liabilities in connection therewith. The assets were listed at $106,960.55, and the liabilities at $76,960.55, leaving a net worth of $30,000. Under date of October 6, 1942, Nehi Corporation issued beverage franchises in the names of the three individuals who were the general partners. Upon formation of the partnership, the petitioner drew from it a salary of $1,250 a month, which was later increased to $1,750. Early in 1943, the petitioner Roy Eaton was advised by his attorney that under a recent court decision * he might be subject to income tax upon the trust's share of the partnership profits, without it being possible for him to get any of that income to use to pay the tax. The petitioner would not have been able to pay *150 the tax from his own resources. In order to meet the situation created by the court decision, the petitioner, on February 28, 1943, created a new trust, herein sometimes called Trust No. 2, with Bishop Trust Company, Limited, as trustee, and with his children as beneficiaries. This trust was essentially the same as Trust No. 1, except that it did not contain any provisions for the use of either income or corpus for the education, support, or maintenance of the children during the existence of the trust. The trustee was to accumulate all income during the existence of the trust. The petitioner contributed $15,000 to Trust No. 2, which sum was used by it to purchase from Trust No. 1 all of its right, title and interest in and to its 30 per cent capital interest in the special partnership. Formal instruments were executed assigning the partnership interest and amending the agreement of special partnership to show the new trust as being a partner. On the same day, February 28, 1943, Trust No. 1 loaned the sum of $15,000 to the partnership and received from the partnership its note due one year after demand, with interest at *151 5 per cent per annum. Interest was paid periodically and the note was paid in full on November 23, 1946. The trustee consented to the creation of Trust No. 2 and the sale of the property of Trust No. 1 to Trust No. 2 because there was no change in the identities of the persons in interest, and because it then appeared that there would be some advantage tax-wise. During the existence of the special partnership, the petitioner Roy Eaton regularly discussed the policies and finances of the business with officers of the trustee. In the early years of the partnership, it was faced with a rapid expansion of its business and it had inadequate capital. The expansion of the business was largely due to the increase in military personnel in Hawaii during World War II. Under the Nehi franchises, it was necessary that customers be given adequate service. This necessitated that the partnership's facilities and equipment be enlarged, and required additional working capital. In order to provide additional capital, the partners and trust company officers agreed that until the partnership capital should exceed $100,000 no partner should withdraw any profits or capital except to pay taxes, commissions, *152 fees and expenses of the special partner and taxes on the partnership profits of the general partners. When partners Johnson and Prock were released from military service they became active in the partnership business. In 1946, the partnership business was falling off and they decided to sell their interests. An audit was made to determine the values of their interests and the petitioner Roy Eaton purchased their interests at those values on June 30, 1946. The amounts that Johnson and Prock received did not include any sums for their interest in the franchises. Thereafter, an appropriate certificate of change of special partnership was filed in the proper public office and a notice was duly published. The partnership, Nehi Beverage Company of Hawaii, sold all of its assets and property to Nehi Beverage Company of Hawaii, Limited, as of the opening of business on October 1, 1946. The capital and drawing accounts of the special partner at the time of sale were, respectively, $30,000 and $19,000. The capital and drawing accounts of the general partner were, respectively, $70,000 and $6,512.71. The purchaser was a corporation in which the petitioner had no interest. Notes were given *153 by the purchaser in the aggregate amount of $165,000 for part of the purchase price, of which notes in the principal amount of $115,500 were payable to the petitioner Roy Eaton, and notes in the principal amount of $49,500 were payable to the Bishop Trust Company, trustee of Trust No. 2. Appropriate steps were thereafter taken to dissolve the special partnership and cancel its certificate. The distributive share of partnership income of Trust No. 1 for the period ended February 28, 1943, was $10,049.17. In succeeding years its income consisted of interest and dividends from investments. At September 30, 1950, the assets of Trust No. 1 consisted of cash in the amount of $377.61, and stocks, bonds and savings and loan certificates with a cost of $24,919.10, a total of $25,296.71. The distributive share of partnership income of Trust No. 2 for years ended June 30, was as follows: 1944
$ 7,722.93
1945
22,059.40
1946
23,076.92
1947
5,182.80
Trust No. 2 realized a profit on the sale of partnership assets. In succeeding years its income consisted of interest and dividends from investments. At February 28, 1951, the assets of Trust No. 2 consisted of cash in *154 the amount of $3,604.22 and stocks, bonds and savings and loan certificates with a cost of $92,336.92, a total of $95,941.14. Trust Nos. 1 and 2 duly filed Federal fiduciary income tax returns each year and paid the tax shown to be due thereon. None of the funds of Trusts Nos. 1 and 2 was ever paid out to the beneficiaries thereof. During the period of the existence of the special partnership, the petitioner Roy Eaton supported his children from his own income. The petitioner Roy Eaton, Charles P. Johnson, Walter L. Prock, Jr., and Trusts Nos. 1 and 2 really and truly intended to and did join together for the purpose of carrying on a business and sharing its profits and losses. Trusts Nos. 1 and 2 were bona fide trusts for the benefit of the children of the petitioners, and the petitioners had no substantial control over, or interest in, the corpus or income thereof. Opinion ARUNDELL, Judge: The issue for decision here is the same as that in the cases of , and . That issue is whether income reported by trusts created by the petitioner Roy Eaton is income of Eaton and his *155 wife either under the rationale of , or on the ground that the trusts were not bona fide partners of Roy Eaton in the operation of a business. The basic facts in these cases are essentially the same as those in the Sultan and Brodhead cases, supra. They require the same decision, namely, that the income reported by the trusts was their income, and that the respondent erred in treating such income as income of the petitioners. Decisions will be entered under Rule 50. Footnotes
*. The beverages were known by the trade names of "Nehl", "Royal Crown", and "Par-T-Pak".↩
*. .↩